UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD E. DAWES, III,            )
                                  )
      *Plaintiff*        )
                                  )
v.                                )    No. 1:11-cv-272-DBH
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
      *Defendant*       )

**REPORT AND RECOMMENDED DECISION[1]**

The plaintiff in this Supplemental Security Income ("SSI") appeal contends that the administrative law judge was required to grant his request for a continuance so that he could obtain a lawyer and that the administrative law judge failed to develop the record adequately. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from reflux, hypothyroidism, attention deficit hyperactivity disorder, and depression not otherwise specified, but none of these impairments, considered separately or in combination, was severe, Findings 2-3, Record at 19; and that, therefore, the plaintiff was not under a disability, as that term is defined in the Social Security Act, at any time from the date of application, December 29, 2008, through

---

[1] This action is properly brought under 42 U.S.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

the date of the decision, March 3, 2011, Finding 4, *id*. at 15. The Decision Review Board declined to disturb the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.420(a); *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Continuance of Hearing

The plaintiff's primary claim in this case is a narrow one: he requested a continuance of the hearing before the administrative law judge so that he could obtain a new representative, and

the administrative law judge wrongly denied his request. Statement of Specific Errors ("Itemized Statement") (Docket No. 12) at 1-6.

At the start of the hearing, the plaintiff and the administrative law judge had the following colloquy:

> ALJ: . . . I'm a United States administrative law judge with the Office of Disability Adjudication and Review here in Portland. And you're representing yourself today?
>
> [PTF]: I'm actually – I was here to try to get a[n] extension so I can get a new lawyer.
>
> ALJ: . . . Well, Mr. Dawes, you – you do have the right to have an attorney or qualified representative. An attorney or qualified representative is presumed to have the special knowledge of the Social Security Act, the regulations, the rulings, the case law. You can take that special knowledge and apply it to the facts of your claim and make an argument as to why you are disabled. Generally speaking, an attorney would – or a qualified representative would charge on the contingency fee, meaning if you win, you pay. You don't win, you don't pay. And the fee would be 25 percent of the total past due benefits or $6,000, whichever is less, cost[s] would be your responsibility. Here, you know, I know – I understand you've had two attorneys already. You had Mr. Jackson, is that correct?
>
> [PTF]: I had somebody from the office of Jackson and [McNichol.]
>
> ALJ: Right, that was attorney Jackson and then before that, there was one other attorney who you took over [INAUDIBLE] Tak[e]over. So what you need to do in order for me to grant a continuance in this matter at this time is convince me that if I were to grant a continuance, there'd be a meaningful opportunity for an attorney to file an appearance on your behalf. So if you'd like to do that, I'll hear you.
>
> [PTF]: Mm-hmm. Only thing I guess I can say is just that I feel that I have a strong case and I've got a lot of things wrong with me and stuff like that and that, you know, I feel if I ever [INAUDIBLE] a lawyer with me that he can prove my case for me and help me out as best as he can.
>
> ALJ: All right, I'm going to deny your motion, Mr. Dawes. Part of the reason for this is based on the number of attorneys you've had and the fact that they withdrew. Second – secondarily – secondly, only I scheduled this – this has been scheduled for one, two [INAUDIBLE] six

3

          consultative examinations which you failed to attend. So I'm going to
          draw an adverse inference from that, and in terms of the – your ability to
          retain an attorney.

Record at 22-24.

Actually, the record reflects that Mary-Ann Hamilton, a general assistance caseworker for the City of Bangor, registered as the plaintiff's representative when he first filed the claim at issue in this case. Motion to Correct the Record (Docket No. 11) at 1 & Appointment of Representative form (Docket No. 11-1). She indicated that she was not an attorney. Docket No. 11-1. Just over a year later, she withdrew as the plaintiff's representative because "he has now hired an attorney for his pending Social Security case." Memorandum to Social Security Administration from Mary-Ann Hamilton dated July 15, 2010 (Docket No. 11-2). Attorney Jackson filed an appointment of representative form on July 19, 2010. Docket No. 11-3. He notified the administrative law judge of his withdrawal from representing the plaintiff, without explanation, by letter dated January 18, 2011. Record at 74. The hearing was held on February 8, 2011. *Id.* at 22.

The plaintiff relies on the following passage from the Hearings, Appeals and Litigation Law Manual ("HALLEX"), an internal procedural document of the Social Security Administration, *see Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001): "If the claimant desires to postpone the hearing to obtain a representative, and it is the first such request, the ALJ should grant the requested postponement." HALLEX, § I-2-6-52 (April 28, 2011), 1993 WL 643033.[2] Clearly, the plaintiff in this case requested a postponement in order to obtain a representative. The HALLEX says nothing about requiring the claimant to "convince" the administrative law

---

[2] At oral argument, counsel for the commissioner contended that the use of the verb "should" in this passage makes it merely hortatory, rather than mandatory. The verb "should," however, is certainly more directive than "may." It requires, at least, that the administrative law judge give a good reason for deciding not to comply with the directive. As I discuss later in this recommended decision, the administrative law judge's stated reasons for doing so in this case are not sufficient.

4

judge that there would be "a meaningful opportunity for an attorney to file an appearance on [his] behalf," as the administrative law judge stated in this case. The meaning of that phrase is not clear to the court; it is unlikely to have been clear to the plaintiff, whose answer does not appear to have been responsive.

Nor do the administrative law judge's stated reasons for denying the plaintiff's request provide an acceptable basis for doing so. The plaintiff in fact had not been represented previously in this action by two successive attorneys, but rather by a municipal public assistance caseworker, who withdrew upon the entry of an appearance by an attorney, and one attorney, who withdrew without explanation three weeks before the scheduled hearing. Contrary to the administrative law judge's statement in his decision, the plaintiff most assuredly did not say that "he had no meaningful way to retain another qualified representative[,]" Record at 7, and thus the request could not reasonably be said to have been "based on an impossibility." *Id.* Indeed, the cited section of the HALLEX requires an administrative law judge, in these circumstances to "provide the claimant with information about organizations that provide free legal services," which this administrative law judge did not do. Similarly, nothing in the HALLEX requires the claimant seeking a continuance to give a date certain by which he will have retained counsel who has entered an appearance, failing which he will be required to go ahead with the hearing *pro se*, which the administrative law judge in this case suggested as another reason for his denial ("the claimant's request to continue the matter to some indefinite future time was not allowed," Record at 7).

The fact that the plaintiff failed to attend several scheduled appointments for consultative examinations, mentioned by the administrative law judge at the hearing but not in his opinion, also provides no basis for denial of what appears from the record to have been the plaintiff's first

5

request for a continuance in order to obtain an attorney. Without considerably more information, the two cannot even be reasonably said to be related.

The federal circuit courts that have addressed the question of whether the commissioner is required to follow the HALLEX as a matter of law have differed, *see E.E.P. v. Barnhart*, No. 03-246-P-C, 2004 WL 1529262, at *2 (D. Me. June 24, 2004), and the First Circuit has not yet spoken on the issue. However, this court has concluded that the First Circuit, given the fact that it has so treated the commissioner's Program Operations Manual System ("POMS"), another internal document, can be expected to hold the commissioner to the terms of the HALLEX. *Id*. Accordingly, the administrative law judge's denial of the plaintiff's request for a continuance in this case can only be considered an error.

That does not end the matter, however, As Judge Cohen noted in *E.E.P.*, courts that require the commissioner to act in accordance with his own internal policy directives also require that a claimant show that he or she was prejudiced by the failure to do so. *Id*. Here, the plaintiff offers two possible sources of prejudice: an assertion that the administrative law judge failed to develop the record fully, and a lack of substantial evidence to support his Step 2 findings.

### B. Development of the Record

The administrative law judge has a duty, particularly when the claimant is unrepresented, to develop an adequate record upon which a reasonable conclusion can be drawn. *Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir. 1991). The plaintiff contends that, in this case, the administrative law judge failed in that duty, because he found that the plaintiff had not been treated for the two mental impairments from which the administrative law judge found the plaintiff to have suffered since December 2008 and used this finding as the basis for his determination that the impairments were not severe. Itemized Statement at 6-8. This conclusion,

request for a continuance in order to obtain an attorney. Without considerably more information, the two cannot even be reasonably said to be related.

The federal circuit courts that have addressed the question of whether the commissioner is required to follow the HALLEX as a matter of law have differed, *see E.E.P. v. Barnhart*, No. 03-246-P-C, 2004 WL 1529262, at *2 (D. Me. June 24, 2004), and the First Circuit has not yet spoken on the issue. However, this court has concluded that the First Circuit, given the fact that it has so treated the commissioner's Program Operations Manual System ("POMS"), another internal document, can be expected to hold the commissioner to the terms of the HALLEX. *Id*. Accordingly, the administrative law judge's denial of the plaintiff's request for a continuance in this case can only be considered an error.

That does not end the matter, however, As Judge Cohen noted in *E.E.P.*, courts that require the commissioner to act in accordance with his own internal policy directives also require that a claimant show that he or she was prejudiced by the failure to do so. *Id*. Here, the plaintiff offers two possible sources of prejudice: an assertion that the administrative law judge failed to develop the record fully, and a lack of substantial evidence to support his Step 2 findings.

### B. Development of the Record

The administrative law judge has a duty, particularly when the claimant is unrepresented, to develop an adequate record upon which a reasonable conclusion can be drawn. *Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir. 1991). The plaintiff contends that, in this case, the administrative law judge failed in that duty, because he found that the plaintiff had not been treated for the two mental impairments from which the administrative law judge found the plaintiff to have suffered since December 2008 and used this finding as the basis for his determination that the impairments were not severe. Itemized Statement at 6-8. This conclusion,

he asserts, was contradicted his own testimony, Record at 30, and a progress note from Acadia Hospital dated March 3, 2009. *Id*. at 321-22.

However, this argument misconstrues the administrative law judge's findings with respect to the plaintiff's mental impairments. The administrative law judge wrote the following in this regard:

> The claimant has been diagnosed with attention deficit hyperactivity disorder and depression not otherwise specified due to complaints of depression, decreased energy, anger, impatience, disturbance of sleep, difficulty dealing with people, and difficulty staying on tasks and maintaining attention and concentration (Exhibits 2F, 15F, and 19F). However, he has typically been described in the record as alert, oriented, cooperative, coherent, logical, and goal directed with an appropriate mood and affect, and mental status examinations have failed to document hallucinations, delusions, psychomotor agitation or retardation, suicidal or homicidal ideation, or abnormal thought processes (Exhibits 1F, 2F, 14F, 15F, and 19F). Multiple examiners have found his insight and judgment to be good, his memory to be intact, and his attention span and concentration to [be]normal (Exhibits 1F, 2F, 15F, and 19F). It was also noted during a psychiatric assessment performed on December 8, 2008, that the claimant hardly missed a beat whenever his cell phone chimed a text message, and that he would check it and even respond to a text while also tracing most of what was happening during the session (Exhibit 15F).
> 
> \* \* \*
> 
> The evidence of record fails to demonstrate that the claimant has . . . required psychiatric hospitalization. He received counseling at Community Health and Counseling from June through October, 2005, but was subsequently discharged due to failure to attend scheduled appointments (Exhibit 2F). While the claimant requested counseling again in December, 2008, he did not show up for any further appointments (Exhibit 15F), and there is no evidence that he has sought or received further psychotherapy since that time.
> 
> In order to further evaluate[] the claimant's mental status, consultative examinations were scheduled with James Werrbach, Ph.D., in January, 2006 (Exhibits 3F, and 5F); with Donna M. Gates, Ph.D., in April, 2007 (Exhibits 9F, and 11F); and with Adrienne Butler, Ed.D, in February, 2006 (Exhibit 8F). However, the claimant failed to show up for these scheduled appointments.

7

The claimant has been prescribed psychotropic medications in the past (Exhibits 15F, 18F, and 19F), and was being prescribed Adderall in 2009 (Exhibits 3F, and 5F). Medical records show that when compl[ia]nt with treatment, the claimant's symptoms have improved. For instance, he told examiners on March 3, 2009, that he was able to focus and concentrate much better after taking Adderall, and that he did not feel like he needed Vistaril, and treating sources found on that date that his attention and concentration were greatly improved with medication (Exhibit 15F). While he was given a global assessment of functioning score of 50 in December, 2008 (Exhibit 15F), this was based on his subjective allegations.

\* \* \*

On November 20, 2009, Dewayne Hogan, L.C.S.W., concluded the claimant a global assessment of functioning score of 45, and opined that his current mental status would make it difficult for him to interact with other people (Exhibit 19F). Little weight has been given to this opinion as it is not supported by the record evidence, and appears to be based almost entirely on the claimant's subjective allegations (Exhibit 19F).

\* \* \*

The undersigned has considered the opinions of the experts at the state Disability Determination Services (Exhibits 6F, 7F, 12F, 13F, 16F, 17F, 20F, and 21F). As non-examining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act (SSR 96-6p). The undersigned finds these opinions to be well supported and consistent with the record as a whole. Therefore, they have been given great weight.

\* \* \*

Because the claimant has medically determinable mental impairments, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in Section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

With respect to the criteria in paragraph "B" of the listing of mental impairments, which address the functional limitations arising from psychiatric disorders, the undersigned finds that the claimant has mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild limitations in maintaining concentration, persistence, or pace. The evidence of record also demonstrates that the claimant has had no episodes of decompensation in a work or work-like setting.

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere. 20 CFR 416.920a(d)(1).

Record at 12-15.

The administrative law judge noted that the plaintiff did not seek psychotherapy after December 2008, not that he was not treated for his claimed mental impairments thereafter. The plaintiff's testimony does suggest that he was seeing a psychiatrist – he testified that "My psychiatrist that I see now has diagnosed me with [anxiety]." Record at 30. The hearing before the administrative law judge was held on February 8, 2011, *id.* at 22, and the most recent medical record in the administrative record is dated March 3, 2009. *Id.* at 321. This discrepancy should have triggered in the administrative law judge an attempt to account for the two-year interim period,[3] beginning with questions to the plaintiff and extending, particularly where, as here, he had denied the plaintiff's request for a continuance to obtain a lawyer, to a duty to seek out further medical records. Certainly, this shows a "gap in the evidence" that appears to be "necessary to a reasoned evaluation of the claim." *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991). Nor would it require undue effort by the administrative law judge "to see that the gap[ was] somewhat filled." *Id.*

The gap remains a problem with the evidence cited by the administrative law judge in evaluating the plaintiff's mental impairments as nonsevere. The administrative law judge gave "great weight" to the reports of the state-agency experts who reviewed the medical records that were in the administrative record. Record at 14. None of the state-agency psychologists whose

---

[3] At oral argument, counsel for the commissioner argued that the plaintiff was "mostly represented" during this period, apparently meaning to suggest that any gap in the evidence was the plaintiff's responsibility. It is the gap in the evidence available for review by the administrative law judge, and not whether the plaintiff could possibly have submitted that evidence himself at an earlier point in the proceedings, that triggers the administrative law judge's duty.

9

evaluations of the plaintiff's mental status were cited by the administrative law judge reviewed any treatment records dated after November 20, 2009. Record at 259, 277, 352, 381.

This error would require remand even if the administrative law judge had not erred in refusing the plaintiff's request for a continuance. Under the circumstances, it also serves as evidence of prejudice to the plaintiff resulting from that denial, as it is likely that an attorney experienced in Social Security law would have noticed the gap in the records when compared with the plaintiff's testimony and would either have asked the administrative law judge to obtain records from the psychiatrist who was treating the plaintiff at the time of the hearing, or, more likely, have attempted to obtain those records directly.

The plaintiff is entitled to remand on this basis. *Hill v. Astrue*, No. EDCV 09-769 CW, 2009 WL 4573245, at *5 (C.D. Cal. Nov. 30, 2009); *Price v. Astrue*, No. 07-cv-166-PB, 2008 WL 4148943, at *4-*6 (D. N.H. Sept. 2, 2008). *See also Billings v. Apfel*, No. CIV. 98-171-B, 1999 WL 33117142, at *3-*4 (D. Me. May 13, 1999) (remanding for this reason where plaintiff was represented by counsel).

### C. Severity of Impairments

In a four-sentence argument, the plaintiff contends that the administrative law judge's conclusion that his attention deficit hyperactivity disorder and depression were not severe impairments was not supported by substantial evidence. This is presented essentially as an alternate way of stating the argument that the administrative law judge failed to develop the record adequately: "Because the record did not contain all of the records related to the Plaintiff's psychological conditions, the ALJ's determination that [there] were not severe impairments is not supported by substantial evidence." Itemized Statement at 9. This brief presentation by the plaintiff is not sufficiently presented to require further separate consideration.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
